The Honorable Richard A. Jones

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

9

PREFERRED NUTRITION INC., a Canadian
corporation; and NATURAL FACTORS
NUTRITIONAL PRODUCTS INC., a
Washington corporation,

　　　　　　　　Plaintiffs,

　　　　v.

LORNA VANDERHAEGHE, a natural person;
HEADLINES PROMOTIONS LTD., a Canadian
corporation; and LORNA VANDERHAEGHE,
INC., a purported entity of unknown corporate
status,

　　　　　　　　Defendants.

No. 2:10-cv-00907 RAJ

PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS BASED ON LACK OF
PERSONAL JURISDICTION

**NOTE ON MOTION
CALENDAR July 30, 2010**

**ORAL ARGUMENT
REQUESTED**

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ)
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

# TABLE OF CONTENTS

I.  INTRODUCTION..................................................................................1

II.  FACTUAL BACKGROUND ..............................................................2

    A.  Washington Plaintiff Natural Factors Nutritional Products, Inc. ...........2

    B.  Defendants' Washington and U.S. Contacts Relating to Plaintiffs' Marks, Trade Dress, and U.S. Women's Line .........................................2

    C.  Defendants' Washington and U.S. Contacts Promoting Defendants' Infringing Marks, Trade Dress, and Competing Products .......................6

III.  ARGUMENT ......................................................................................8

    A.  Legal Standard......................................................................................8

    B.  Defendants are Subject to Jurisdiction Under Rule 4(k)(2) .................10

        1.  Specific Jurisdiction Exists Under Rule 4(k)(2) ........................11

            a.  Defendants Purposefully Availed Themselves of the Privilege of Conducting Business in the United States and Purposefully Directed Activities at the United States ...........12

                i.  Purposeful Availment.................................................12

                ii.  Purposeful Direction .................................................13

            b.  Plaintiffs' Claims Arise From Defendants' United States Contacts.............................................................................15

            c.  The Exercise of Jurisdiction is Reasonable...................................16

                i.  Purposeful Interjection .......................................17

                 ii.  Defendants' Burden .......................................17

                 iii.  Sovereignty...........................................................17

                 iv.  Forum's Interest ....................................................18

                 v.  Efficient Resolution.............................................18

                 vi.  Plaintiffs' Convenience.......................................18

                 vii.  Alternative Forum ...............................................18

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - i
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

2.      General Jurisdiction Exists Under Rule 4(k)(2).........................19

3.      Defendants' Attempts to Avoid Jurisdiction Under Rule 4(k)(2)
Are Unavailing .......................................................................................20

C.    Defendants are Subject to Specific Jurisdiction Based on Their
Washington Contacts.............................................................................21

D.    Defendants May Be Subject to General Jurisdiction Based On Their
Washington Contacts, Depending on Discovery...................................22

E.    Further Discovery Would Confirm Personal Jurisdiction.....................23

IV.    CONCLUSION .................................................................................................23

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - ii
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

**TABLE OF AUTHORITIES**

**Cases**

*AARP v. 200 Kelsey Associates, LLC*, 2009 WL 47499, at *7 (S.D.N.Y. 2009) ..................... 16

*Amini Innovation Corp. v. JS Imports Inc.*, 497 F. Supp. 2d 1093, 1106 (C.D. Cal. 2007) ... 14, 16

*Attachmate Corp. v. Pub. Health Trust of Miami-Dade County*, 686 F. Supp. 2d 1140, 1145-46 (W.D. Wash. 2010) ..................................................................... passim

*Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.*, 682 F. Supp. 203 (S.D.N.Y. 1987)... 15

*Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 987 (9th Cir. 2009) ............... 15

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) ............................................ 11, 16

*Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997) ..................................................................................... 14

*Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001) ....................................................... 20, 21

*Harris Rutsky & Co. Ins. Serv., Inc. v. Bell & Clement Ltd.*, 328 F.3d 1122, 1128-29 (9th Cir. 2003) ............................................................................................ 8, 17

*Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 441-16 (1984) ........... 10, 19

*Holland Am. Line Inc. v. Wartsila N. Am. Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) ...... 9, 10, 20

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) .................................................... 9

*Jackson v. Grupo Industrial Hotelero, S.A.*, No. 07-22046-CIV, 2008 WL 4648999 at, * 8-9 (S.D. Fla. Oct. 20, 2008) .............................................................................. 13

*Life Alert Emergency Response, Inc. v. LifeAlert Security, Inc.*, No. CV 08-3226 AHM (PLAx), 2008 WL 5412431 at *5 (C.D. Cal. Dec. 29, 2008) ................................. 14, 16, 18

*Monster Cable Prods, Inc. v. EuroFlex S.R.L.*, 642 F. Supp. 2d 1001, 1008 (N.D. Cal. 2009) ............................................................................................... passim

*Northern Light Tech., Inc. v. Northern Lights Club*, 97 F. Supp. 2d 96, 107-08 (D. Mass. 2000) ...................................................................................................... 19

*Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) .......................... passim

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - iii
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1     *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006)............................................ 9

2     *Quokka Sports, Inc. v. Cup Int'l, Ltd.*, 99 F. Supp. 2d 1105, 1111 (N.D. Cal. 1999) ........ 13, 15

3     *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991)............................................ 11, 12

4     *Silver Ring Splint Co. v. DigiSplint, Inc.*, 508 F. Supp. 2d 508, 515 (W.D. Va. 2007) 13, 18, 19

5     *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir. 2006).......................... 19

6     *Young v. Vannerson*, 612 F. Supp. 2d 829 (S.D. Tex. 2009).................................................... 15

7     **Rules**

8     Fed. R. Civ. P. 4(k)(2)........................................................................................................... passim

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - iv
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR    1420 Fifth Avenue
JOHNSON | KINDNESS    Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1
## I.    INTRODUCTION

2    In her own words, Defendant Lorna Vanderhaeghe is "America's Women's Health

3   Expert." (Emphasis added.) Ms. Vanderhaeghe lives approximately thirty minutes outside of

4   Washington, and for seven years she carried on a continuous and extensive business

5   relationship with Plaintiff Natural Factors Nutritional Products Inc. ("NF, Inc."), based in

6   Everett, Washington.   That relationship included promoting and consulting on the

7   development of the very trademarks and trade dress that she is now alleged to infringe.  In the

8   course of such promotion, Ms. Vanderhaeghe participated in hundreds of events and media

9   interviews with venues, publications, radio stations, and television stations in Washington and

10   the United States.   During Ms. Vanderhaeghe's extensive U.S. promotional activities, she

11   solicited U.S customers to visit her website and to sign up for her e-newsletter, collecting their

12   contact information in the process.

13    When she decide to start up her own line of products to compete directly with

14   Plaintiffs, Ms. Vanderhaeghe simply adapted the marks and trade dress she had worked on

15   with Everett-based NF, Inc.  Further, she began to use the names and email addresses she had

16   gathered while working for Plaintiffs to solicit U.S. and Washington consumers to purchase

17   her own, infringing goods.  She also filed "intent to use" trademark registration applications

18   with the U.S. Patent and Trademark Office for her virtually identical product line.

19   Ms. Vanderhaeghe also directly solicited Washington and U.S.-based sales representatives

20   and at least one retailer of NF, Inc. regarding the sale of Defendants' infringing goods.  And

21   these are only the facts known to Plaintiffs without the benefit of discovery.

22    Ignoring this long history of extensive contacts with Washington and the United States

23   directly related to Plaintiffs' claims, Ms. Vanderhaeghe plays dumb and claims that she and

24   her company, Headlines Promotions Ltd., have had no relevant contacts with Washington or

25   the U.S.  In light of the true extent of Ms. Vanderhaeghe's contacts, the Court should deny

26   Defendants' Motion to Dismiss for Lack of Personal Jurisdiction.

27

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 1
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

## II.   FACTUAL BACKGROUND

### A.   Washington Plaintiff Natural Factors Nutritional Products, Inc.

Plaintiff NF, Inc. is headquartered in Everett, Washington and markets and sells dietary and nutritional supplements to customers throughout the United States.  Its customers include retailers in the natural products trade, such as Whole Foods Markets and Vitamin Shoppe, as well as distributors, such as Nature's Best and UNFI, which then sell to retailers. Declaration of Kathy McKnight filed July 26, 2010 ("Second McKnight Decl.") ¶ 3.[1]

The majority of NF, Inc.'s 70+ employees work out of offices located at NF, Inc. headquarters in Everett, WA.  Washington-based employees include a marketing manager, an events manager, a product education manager, and five support staff members in the NF, Inc. marketing group.  NF, Inc. operates a packaging facility, maintains a distribution warehouse, develops marketing and advertising, receives and processes orders, and performs all accounting functions in Everett, WA.  *Id.* ¶¶ 4-5.

### B.   Defendants' Washington and U.S. Contacts Relating to Plaintiffs' Marks, Trade Dress, and U.S. Women's Line

In 2003, Lorna Vanderhaeghe and her company Headlines Promotions Ltd. ("HPL") entered into an agreement with NF, Inc. pursuant to which Ms. Vanderhaeghe, acting through HPL, agreed to provide and did provide consulting, marketing, and promotion services to NF, Inc. regarding its sale, marketing, and distribution throughout the United States of a line of dietary and nutritional supplements geared toward women ("Plaintiffs' U.S. Women's Line").  These products are used in connection with trademarks that include various terms in conjunction with the term "SENSE."[2]  *Id.* ¶¶ 6-8; First McKnight Decl. ¶ 6.  NF, Inc. began

---

[1] Ms. McKnight also submitted a declaration (Document 14) in connection with Plaintiffs' Motion for a Preliminary Injunction (Document 13).  In this Opposition, Plaintiffs rely upon and refer to the earlier declaration as the "First McKnight Declaration."  References to the Parkes Declaration in this brief refer to the Parkes declaration submitted with Plaintiffs' Motion for a Preliminary Injunction (Document 15).

[2] All payments for Ms. Vanderhaeghe's consulting and promotion services were made to HPL.  Second McKnight Decl. ¶ 8.  Defendants assert that Ms. Vanderhaeghe conducts all business activities through HPL. Defs' Mot. at 2.  Accordingly, references to Ms. Vanderhaeghe's U.S. contacts herein should be taken to refer to HPL as well, unless otherwise noted.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 2
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

selling Plaintiffs' U.S. Women's Line under the ESTROSENSE® and MENOSENSE® marks in the United States in about April 2003, and launched Plaintiffs' U.S. Women's Line products under the following marks by approximately the following dates:

| Mark | Date launched |
|------|---------------|
| ESTROSENSE® | April 2003 |
| MENOSENSE® | April 2003 |
| THYROSENSE® | August 2004 |
| ADRENASENSE® | August 2004 |
| URISENSE® | August 2004 |
| OSTEOSENSE® | June 2005 |
| VEINSENSE® | October 2006 |
| MAGSENSE™ | February 2009 |

*Id.* ¶¶ 6-7.

The above trademarks ("Plaintiffs' Marks") are owned by Plaintiff Preferred Nutrition, Inc. ("PNI"). *See* Declaration of Deane Parkes filed July 7, 2010, (Dkt. No. 15) ¶¶ 23-26. NF, Inc. has marketed, distributed, and sold Plaintiffs' U.S. Women's Line products under Plaintiffs' Marks in the United States, with the permission of PNI. Second McKnight Decl. ¶ 7. From 2003 until part-way through 2009, Ms. Vanderhaeghe worked with NF, Inc. to promote Plaintiffs' Marks and Plaintiffs' U.S. Women's Line among customers in the United States, and received over C$750,000 for such work from NF, Inc. *Id.* ¶ 8; First McKnight Decl., ¶ 28.

During the course of her 7-year relationship with NF, Inc., Ms. Vanderhaeghe regularly conducted lectures and other promotional and training events throughout the United States to promote Plaintiffs' Marks and Plaintiffs' U.S. Women's Line. Second McKnight Decl., ¶¶ 9-10. Such events included lectures at natural products stores or hotel venues, trade show appearances, presentation at an annual NF, Inc. sales meeting, and meetings at NF, Inc.'s offices in Everett, WA. *Id.* ¶ 10. In 2008-09 alone, Ms. Vanderhaeghe conducted 21 different promotional lectures and events at trade shows, health food stores, and other venues throughout the United States. *Id.* ¶ 11.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 3
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1    Ms. Vanderhaeghe also regularly participated in interviews and other pieces for

2    publications and radio and television stations in the United States, in which she would

3    promote Plaintiffs' Marks and Plaintiffs' U.S. Women's Line. *Id.* ¶¶ 12-13, 25-27. For

4    example, from January 2008 to June 2009, Ms. Vanderhaeghe participated in 48 radio and

5    television interviews with U.S.-based radio and television stations, including an April 2008

6    segment with KVOS television station in Bellingham, WA. *Id.* ¶¶ 25-27.

7    Ms. Vanderhaeghe's participation in such U.S. events and media interviews, including

8    dates and travel arrangements, was coordinated by NF, Inc. personnel operating out of NF,

9    Inc.'s Everett, WA offices.    Second McKnight Decl. ¶¶ 12-25.    For example,

10    Ms. Vanderhaeghe worked with NF, Inc. Marketing Manager Julie Nordheim and Events

11    Manager Karen Petach, Washington residents who work out of NF, Inc.'s Everett offices, to

12    coordinate the timing, length, and content of Ms. Vanderhaeghe's meetings and promotional

13    lectures in the U.S., as well as Ms. Vanderhaeghe's participation in interviews with U.S.

14    media outlets. *Id.* ¶¶ 12-25.

15    Over the course of Defendants' relationship with NF, Inc., Ms. Vanderhaeghe regularly

16    communicated with NF, Inc. personnel based in Everett, WA, as well as sales representatives

17    throughout the country, regarding promotion of Plaintiffs' U.S. Women's Line and associated

18    Marks and Trade Dress. Such communication included numerous e-mails and phone calls to

19    and from NF, Inc. personnel in Washington. *Id.* ¶¶ 14-17.

20    At Ms. Vanderhaeghe's direction, Everett-based NF, Inc. personnel put videos on

21    YouTube showing Ms. Vanderhaeghe promoting Plaintiffs' Marks. *Id.* ¶¶ 16 and 24. Using

22    Everett-based NF, Inc. personnel as a conduit, Ms. Vanderhaeghe communicated with U.S.

23    customers and publications regarding Plaintiffs' U.S. Women's Line. *Id.* ¶¶ 17, 22-27.

24    Ms. Vanderhaeghe also encouraged NF, Inc. personnel in Everett and throughout the United

25    States to communicate with her regarding the promotion of Plaintiffs' Women's Line and

26    Plaintiffs' Marks, noting that all NF, Inc.'s sales representatives had her e-mail address. *Id.*

27    ¶ 17.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 4
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1    Around Fall 2008, NF, Inc. began developing revised labels, packaging, and trade

2   dress for Plaintiffs' U.S. Women's Line ("Plaintiffs' U.S. Trade Dress").  NF, Inc. began using

3   the revised Trade Dress, the same one Ms. Vanderhaeghe later copied, around January 2009.

4   *Id.* ¶ 18.  Ms. Vanderhaeghe consulted with NF, Inc. personnel, including Vice President of

5   Sales and Marketing Kathy McKnight and Marketing Manager Julie Nordheim, regarding the

6   development of Plaintiffs' U.S. Trade Dress.  *Id.* ¶¶ 18-19.  Ms. Vanderhaeghe consulted

7   regarding the use of her name and likeness on the labels of Plaintiffs' U.S. Women's Line, as

8   well as other design elements, such as color, location, layout, font, etc.  Ms. Vanderhaeghe

9   consented to NF, Inc.'s use of her name and likeness on the labels of Plaintiffs' U.S. Women's

10   Line for a 6-month period beginning in January 2009. *Id.* ¶¶ 18-19.

11    Ms. Vanderhaeghe encouraged NF, Inc. to use her name and likeness on the labels of

12   Plaintiffs' U.S. Women's Line, stating that she had developed a following among some U.S.

13   customers and that her website received numerous hits from online visitors based in the

14   United States.  *Id.* ¶ 20.  During the course of her U.S. promotion efforts on behalf of

15   Plaintiffs, Ms. Vanderhaeghe often directed U.S. customers to her website, available at

16   **www.hormonehelp.com** and **www.healthyimmunity.com** ("LV Website"), and encouraged

17   them to sign-up for her regular e-newsletter.  *Id.* ¶¶ 21-22.  Ms. Vanderhaeghe also

18   encouraged listeners and viewers of her U.S. media spots, readers of her newsletters sent to

19   U.S. recipients, and attendees at her U.S. promotional events to visit the LV Website.

20   *Id.* ¶¶ 24-26.

21    Visitors to LV Websites could sign up to receive e-mails and newsletters from

22   Ms. Vanderhaeghe.  *Id.* ¶¶ 21-22.  She or another person would collect e-mail and contact

23   information at Ms. Vanderhaeghe's U.S. promotional events, which would be used to send

24   Ms. Vanderhaeghe's e-newsletters promoting Plaintiffs' U.S. Women's Line.    Similarly,

25   retailers in the U.S. would sometimes provide contact information for their customers so that

26   Ms. Vanderhaeghe   or   NF,   Inc.   could   send   pertinent   information.    *Id.* ¶¶ 26-27.

27

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 5
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1   Ms. Vanderhaeghe has admitted that 30,000 U.S. customers receive her newsletter by email.

2   Parkes Decl, Exh. 33.

3   **C.    Defendants' Washington and U.S. Contacts Promoting Defendants' Infringing**
        **Marks, Trade Dress, and Competing Products**

4

5       In Fall 2009, Defendants began filing U.S. trademark applications to register the

6   following trademarks for use with goods ("Defendants' Women's Line") that compete directly

7   with Plaintiffs' similarly named products:

8

| Application Serial Number | Mark |
| --- | --- |
| 77959020 | SHAPESMART |
| 77958969 | SLEEPSMART |
| 77921327 | URISMART |
| 77921274 | SEXSMART |
| 77889493 | OSTEOSMART |
| 77889481 | MAGSMART |
| 77889454 | IRONSMART |
| 77881574 | MULTISMART |
| 77881570 | VEINSMART |
| 77881569 | MOODSMART |
| 77877994 | SKINSMART |
| 77877980 | ADRENASMART |
| 77877961 | THYROSMART |
| 77877940 | MENOSMART |
| 77848987 | ESTROSMART |

22  Declaration of Cristin Carr, ¶ 9, Ex. 6.

23      Defendants submitted a signed declaration to the USPTO for each Defendants' Mark

24  stating that they had "a bona fide intention to use or use through the applicant's related

25  company or licensee the mark in commerce on or in connection with the identified goods

26  and/or services."  Both Ms. Vanderhaeghe and HPL are listed as owners or applicants on the

27  applications. The applications were signed by Ms. Vanderhaeghe. *Id.*

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 6
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1    Defendants have begun marketing and offering Defendants' Women's Line in the U.S.

2    in connection with Defendants' Marks, along with trade dress that is nearly identical to and

3    obviously copied from Plaintiffs' Trade Dress.   *See* Plaintiffs' Motion for Preliminary

4    Injunction (Dkt. No. 13) ("PI Motion") at 2, 8-9, 12.  As part of these efforts, Defendants have

5    sent an e-mail newsletter to recipients in Washington and the United States explicitly

6    soliciting U.S. customers for Defendants' Women's Line:   "U.S. customers are able to

7    purchase directly from us by emailing **orders@hormonehelp.com** while we work to stock

8    health food stores in the U.S. again."  Second McKnight Decl., ¶¶ 29-30, Ex. 18.   The

9    newsletter also asks recipients to contact their store requesting that it place an order for

10   Defendants' Women's Line.  *Id.*  At least one U.S. consumer complained to one of NF, Inc.'s

11   major retail customers in the U.S. based on this newsletter.  *Id.* ¶ 31.  At least 30,000 U.S.

12   women customers received this email solicitation.  Parkes Decl, Exh. 33.

13   Ms. Vanderhaeghe also attended a major health products trade show in California in

14   March 2010 and solicited NF, Inc. sales representatives, including at least one Washington-

15   resident sales representative, to begin selling Defendants' Women's Line under Defendants'

16   Marks and Defendants' Trade Dress.  *Id.* ¶ 32.  Ms. Vanderhaeghe has also contacted at least

17   one retailer customer of NF, Inc. based in the U.S. in an attempt to get that retailer to sell

18   Defendants' Women's Line, stating that she intended to officially launch Defendants' Women's

19   Line in September 2010.  *Id.* ¶ 33.

20   In addition to Defendants' known attempts to sell Defendants' Women's Line through

21   NF, Inc.'s sales representatives and at least one retail customer,[3] Defendants also advertise and

22   sell Defendants' Women's Line to U.S. customers, using Defendants' Marks and Defendants'

23   Trade Dress, online.  For example, Defendants promote Defendants' Women's Line, Marks,

24   and Trade Dress on the LV Website.  *Id.* ¶ 28; PI Motion at 7-9, 14-15.  This is the same

25

26   _____

     [3] Plaintiffs believe that pending discovery requests will reveal that Defendants have contacted
27   numerous additional sales personnel, representatives and retail customers in the U.S. regarding Defendants'
     infringing products.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 7
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1   website that Defendants spent 7 years promoting among U.S. customers of NF, Inc.   Second

2   McKnight Decl. ¶ 21.   The LV Website receives approximately half of its visits from people

3   located in the U.S.   Carr Decl., ¶ 10.   Also, as discussed above, Defendants solicited 30,000

4   U.S. customers to place orders through the **hormonehelp.com** domain name via e-mail.

5   Second McKnight Decl. ¶ 30; Parkes Decl., Exh. 33.

6       Additionally, Defendants sell Defendants' Women's Line, using Defendants' Marks

7   and Trade Dress, to U.S. customers via at least two online Canadian retailers, such as

8   Cureself, that prominently advertise to U.S. customers.   PI Motion at 14-15, 19; Carr Decl.

9   ¶ 3.   Plaintiffs' counsel's paralegal was able to purchase Defendants' SEXSMART,

10  VEINSMART, ADRENASMART, MENOSMART PLUS, THYROSMART, URISMART,

11  ESTROSMART, GLUCOSMART, SLEEPSMART, and MAGSMART products from

12  Cureself, which were then shipped to the Western District of Washington.[4]   Carr Decl.,

13  ¶¶ 3-8.

### III.   ARGUMENT

**A.   Legal Standard**

16      When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff

17  bears the burden of demonstrating jurisdiction.   *Harris Rutsky & Co. Ins. Serv., Inc. v. Bell &*

18  *Clement Ltd.,* 328 F.3d 1122, 1128-29 (9th Cir. 2003).   Unless there is an evidentiary hearing,

19  however, a plaintiff need only make a prima facie showing of jurisdiction to meet this burden,

20  and all factual disputes are viewed in the plaintiff's favor.   *Id.* at 1129; *Attachmate Corp. v.*

21  *Pub. Health Trust of Miami-Dade County,* 686 F. Supp. 2d 1140, 1145-46 (W.D. Wash.

---

[4] While Plaintiffs do not rely on this purchase as a "sale" that establishes jurisdiction, it nevertheless demonstrates the availability of Defendants' Women's Line to U.S. customers through a website that prominently advertises to U.S. customers. Furthermore, the products and brochures shipped to the U.S. by Cureself identify "Lorna Vanderhaeghe, Inc." as the company sponsoring and producing the products. Carr Decl., ¶¶ 7-8. This completely contradicts Defendants' assertion, Motion at p.3, n.3, that Lorna Vanderhaeghe, Inc. "is not a legal entity and does not exist." It also demonstrates that the "seller" of the products offered by Defendants in their email solicitation of U.S. customers is Lorna Vanderhaeghe, Inc., thus establishing contacts by that entity with the U.S. and Washington for personal jurisdiction purposes.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 8
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

2010). Moreover, as the Court noted in its Order of July 9, 2010 (Dkt. No. 17), "Plaintiffs need only point out with specificity how additional discovery would strengthen their opposition. The court will not grant the motion to dismiss if Plaintiffs demonstrate that additional discovery is likely to reveal that the court has personal jurisdiction over Defendants." *Id.* at 2.

Jurisdiction may be based on Defendants' contacts either with Washington or with the United States as a whole. Defendants' aggregate contacts with the United States as a whole are considered in determining jurisdiction under Fed. R. Civ. P. 4(k)(2), known as the federal long-arm statute. Rule 4(k)(2) allows the exercise of personal jurisdiction over a foreign defendant where (1) the asserted claims arise under federal law, (2) the defendant fails to identify another state in which suit can proceed, and (3) defendant's contacts with the United States as a whole justify the exercise of personal jurisdiction in accordance with federal due process. *See Monster Cable Prods, Inc. v. EuroFlex S.R.L.*, 642 F. Supp. 2d 1001, 1008 (N.D. Cal. 2009) (citing *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1159 (9th Cir. 2006); *Holland Am. Line Inc. v. Wartsila N. Am. Inc.*, 485 F.3d 450, 461 (9th Cir. 2007)). Plaintiffs' claims here arise under the federal Lanham Act, and Defendants have failed to identify any alternative forum in their motion to dismiss. Complaint (Dkt. No. 1) at 9; Defendants' Motion (Dkt. No. 9). Accordingly, if the Court finds that Defendants have sufficient contacts with the United States as a whole, then Rule 4(k)(2) provides a basis for finding jurisdiction.

Defendants' contacts with Washington will support jurisdiction if the Court finds that Defendants have sufficient "minimum contacts" with Washington such that the "maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).[5] Depending on the nature of Defendants'

---

[5] Because Washington's long-arm statute is co-extensive with federal due process requirements, the Court need only analyze whether the exercise of personal jurisdiction over Defendants comports with the federal due process standard as articulated in *International Shoe. Attachmate Corp. v. Public Health Trust of Miami-Dade County*, 686 F. Supp. 2d 1140, 1145-46 (W.D. Wash. 2010).

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 9
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

contacts with Washington, such contacts may give rise to general jurisdiction, whereby defendants may be sued in the forum on any cause of action, or to specific jurisdiction, whereby defendants may be sued on causes of action that arise from or relate to the defendants' forum contacts. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 441-16 (1984). In this case, specific jurisdiction exists over Defendants based on their Washington contacts; additional discovery would be required to establish whether general jurisdiction does or does not exist.

**B.      Defendants are Subject to Jurisdiction Under Rule 4(k)(2)**

Since it is undisputed that Plaintiffs' claims arise under federal law and that Defendants have not identified an alternative forum in the U.S. where they may be sued, the only issue to be determined under Rule 4(k)(2) is whether the Court's exercise of jurisdiction over Defendants based on their U.S. contacts comports with due process.[6] To determine that issue, the Court applies the same type of analysis that is employed in determining jurisdiction under a "forum-based" analysis, the difference being that the Court examines contacts with the U.S. as a whole, rather than solely with one state. *Monster Cable*, 642 F. Supp. 2d at 1008. *See also Holland America*, 485 F.3d at 462 (due process analysis is nearly identical under Rule 4(k)(2), except that contacts with the nation as a whole are considered).

Defendants' actions in applying to register Defendants' Marks in the U.S., advertising and soliciting sales under Defendants' Marks and Trade Dress in the U.S., and their knowledge and use of information gained while consulting and promoting Plaintiffs' Marks and Trade Dress in the U.S. form the basis of this suit, and justify the exercise of specific jurisdiction over Defendants under Rule 4(k)(2). Case law holds that the filing of Defendants' trademark applications alone is sufficient to support jurisdiction under Rule 4(k)(2), even if there were no other contacts, which in this case there are. *Monster Cable*, 642 F. Supp. 2d at

---

[6] As argued below, the Court should find that jurisdiction in Washington exists based on Defendants' extensive Washington contacts. Rule 4(k)(2) provides a separate basis for finding jurisdiction if and to the extent such Washington contacts are for any reason found to be insufficient.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 10
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1008.  Further, Defendants' extensive activities throughout the United States over a period of seven years justify the exercise of general jurisdiction over Defendants under Rule 4(k)(2).

### 1.    Specific Jurisdiction Exists Under Rule 4(k)(2)

To determine the sufficiency of contacts for purposes of specific jurisdiction, whether under Rule 4(k)(2) or a forum state analysis, the Ninth Circuit follows a three-prong test:

(1)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2)    the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3)    the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Attachmate,* 686 F. Supp. 2d at 1146; *see also Panavision Int'l, L.P. v. Toeppen,* 141 F.3d 1316, 1320 (9th Cir. 1998).

The purposeful availment or direction requirement is designed to protect defendants from being haled into court as a result of random or fortuitous contacts with the forum. *See Panavision,* 141 F.3d at 1320 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)).  A single contact with the forum demonstrating purposeful availment or purposeful direction may be sufficient to justify specific jurisdiction, and a lesser showing of minimum contacts is necessary where dictated by considerations of reasonableness. *Monster Cable,* 642 F. Supp. 2d at 1007.   The "purposeful direction" test is generally applied in tort cases, whereas the "purposeful availment" prong is typically applied in cases such as contract cases. *Id.*; *Roth v. Garcia Marquez,* 942 F.2d 617, 621 (9th Cir. 1991); *Panavision,* 141 F.3d at 1320-21.  In this case, both are satisfied.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 11
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

### a. Defendants Purposefully Availed Themselves of the Privilege of Conducting Business in the United States and Purposefully Directed Activities at the United States

#### i. Purposeful Availment

Defendants have purposefully availed themselves of the privilege of doing business in the United State by filing *fifteen (15)* U.S. trademark applications, soliciting sales of Defendants' Women's Line from 30,000 U.S. residents, soliciting business relationships with U.S. sales representatives and at least one retailer, and participating in a business relationship for 7 years with U.S.-resident NF, Inc.

As noted, Defendants' trademark applications <u>alone</u> constitute sufficient purposeful availment to justify the exercise of specific jurisdiction under Rule 4(k)(2) with respect to a trademark infringement claim. In *Monster Cable*, Plaintiff sued an Italian company that had filed a single "intent-to-use" trademark application on a mark similar to that of the plaintiff. 642 F. Supp. 2d at 1005-06, 1008. In denying the Italian company's motion to dismiss, the court held that the single trademark application satisfied the "purposeful availment" prong. The application "constitutes a substantial contact" and "invokes the benefits and protections of trademark law." *Id.* at 1008.

Here, Defendants have filed not one, but 15, "intent-to-use" trademark applications. Further, they have gone far beyond filing trademark applications. They have taken other affirmative steps to enter the U.S. market. For example, they attempted to enter into business relationships with U.S. sales representatives and at least one retailer in order to sell Defendants' Women's Line in the U.S. They also sent a newsletter to their database of contacts, at least 30,000 of whom are in the U.S., expressly inviting U.S. customers to purchase product directly by emailing **orders@hormonehelp.com** (Defendants' email address). The Ninth Circuit has recognized less substantial contacts, even where the foreign resident did not initiate affirmative steps to enter into a U.S. transaction, as constituting "purposeful availment." *See Roth*, 942 F.2d at 619-22 (finding purposeful availment even though foreign author did not solicit, but rather was solicited by, California-based plaintiff to

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 12
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1  enter into failed film production agreement).  The contacts here by contrast show affirmative

2  efforts by Defendants to enter the U.S. market, and are far beyond what the Ninth Circuit

3  requires to show purposeful availment.

4               **ii.  Purposeful Direction**

5       Defendants have purposefully directed activities at the United States and U.S.

6  residents.  For years, Ms. Vanderhaeghe promoted Plaintiff's Women's Line on U.S. radio and

7  television stations and in person at U.S. events, referring to herself as "America's Women's

8  Health Expert."  Second McKnight Decl. ¶ 24.  During this time, Ms. Vanderhaeghe solicited

9  U.S. residents to visit her website and sign up for her e-newsletter, which she specifically

10  tailored for U.S. residents.  Beginning earlier this year, Ms. Vanderhaeghe began advertising

11  Defendants' Women's Line, Defendants' Marks, and Defendants' Trade Dress on her LV

12  Website, which she herself touted as reaching numerous U.S. customers.  *Id.* ¶¶ 20, 28 and 30.

13  In May 2010 she sent an e-newsletter to U.S. residents explicitly soliciting sales from 30,000

14  U.S. residents, and further suggesting that she was "work[ing] to stock health food stores in

15  the U.S. again."  Ms. Vanderhaeghe has, in fact, worked "to stock health food stores in the

16  U.S. again" by attempting to recruit U.S. sales representatives and at least one retailer to sell

17  Defendants' Women's Line.

18       Numerous courts have recognized far less substantial contacts as satisfying the

19  "purposeful direction" prong of the specific jurisdiction test.  *See, e.g., Quokka Sports, Inc. v.*

20  *Cup Int'l, Ltd.*, 99 F. Supp. 2d 1105, 1111 (N.D. Cal. 1999) (finding personal jurisdiction

21  where owners of infringing domain names "aimed a significant portion of their commercial

22  effort at the United States"); *Jackson v. Grupo Industrial Hotelero, S.A.*, No. 07-22046-CIV,

23  2008 WL 4648999 at *8-9 (S.D. Fla. Oct. 20, 2008) (exercising specific jurisdiction over

24  owners of a Cancùn nightclub who significantly targeted U.S. customers, solicited U.S.

25  customers to visit their website, and displayed allegedly-infringing advertisements on their

26  website); *Silver Ring Splint Co. v. DigiSplint, Inc.*, 508 F. Supp. 2d 508, 515 (W.D. Va. 2007)

27  (exercising specific jurisdiction over Canadian company accused of trademark infringement

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 13
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1   that was "actively soliciting U.S. customers and ha[d] taken steps to compete in the U.S.

2   fingersplints market.").

3         Moreover, under the "effects" test, "numerous courts within the Ninth Circuit have

4   found specific jurisdiction in cases where a plaintiff brings suit in its home forum against an

5   out-of-state defendant, alleging that the defendant engaged in infringing activities knowing

6   that plaintiff was located in the forum." *Amini Innovation Corp. v. JS Imports Inc.*, 497

7   F. Supp. 2d 1093, 1106 (C.D. Cal. 2007) (collecting cases); *see also Panavision*, 141 F.3d

8   1321-22; *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106

9   F.3d 284, 289 (9th Cir. 1997).   The *Amini* court found purposeful direction and exercised

10  specific jurisdiction over defendants, where a California plaintiff alleged willful copyright

11  infringement and the facts suggested that defendants knew the plaintiff was located in

12  California, despite no evidence that defendants sold infringing products to California

13  residents.

14        Similarly, in *Life Alert Emergency Response, Inc. v. LifeAlert Security, Inc.*, No. CV

15  08-3226 AHM (PLAx), 2008 WL 5412431 at *5 (C.D. Cal. Dec. 29, 2008), the court

16  exercised jurisdiction over a small Canadian start-up company accused of willful trademark

17  infringement based on evidence that the defendant's website was expressly targeted at U.S.

18  residents, and the defendant had made one sale to an Arizona resident.   The facts here are

19  similar, but more extensive.   Plaintiffs allege willful trademark infringement,   Defendants

20  have targeted U.S. residents through their website.   A substantial number of website visitors

21  are from the U.S., and Defendants have over the years invited U.S. residents to sign up at the

22  site.   The site also contains Defendants' newsletter soliciting orders for their new product line

23  from U.S. residents.

24        Moreover, there can be no dispute that Defendants knew plaintiff NF, Inc. is based in

25  the United States, and that the effects of Defendants' infringement and unfair competition

26  would be felt in the United States.   These facts alone show greater purposeful direction at the

27  United States than the facts in *Amini* or *Life Alert*; *see also Attachmate*, 686 F. Supp. 2d at

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 14
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1147 (noting that defendant's alleged infringing use of plaintiff's copyrighted material in competition with plaintiff supports a finding of purposeful direction) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 987 (9th Cir. 2009)).

In their Motion, Defendants argue that jurisdiction does not exist under Rule 4(k)(2) because they have made no sales of their current product line in the U.S.  (Motion at 13.) While the truth of that assertion has not been verified through discovery, even taking the assertion at face value it is insufficient to defeat jurisdiction.  First, proof of "sales" is unnecessary to show that U.S. trademark laws apply.  *See, e.g., Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.*, 682 F. Supp. 2d 203 (S.D.N.Y. 1987) (Lanham Act does not require that the allegedly infringing merchandise be available to the consuming public); *cf. Young v. Vannerson,* 612 F. Supp. 2d 829 (S.D. Tex. 2009) (controversy found to exist where intent to use application was filed, even though no infringing product had yet been sold).

Second, Defendants neglect to mention the facts that they have *solicited* U.S. sales from 30,000 U.S. customers, filed 15 trademark applications, and sought to build a sales network and customer base in the U.S.  Defendants also neglect to mention their 7 years of extensive activities in the U.S. in the same line of business, during which they helped to develop the marks and trade dress they are now infringing, and during which they accumulated the contacts list they are now using to solicit sales.  Under the authorities cited above, Defendants' U.S. contacts are more than sufficient to support a finding of jurisdiction.

**b.    Plaintiffs' Claims Arise From Defendants' United States Contacts**

Plaintiffs' claims for trademark and trade dress infringement arise out of Defendants' contacts with the United States.  First, Plaintiffs' advertising to and solicitation of orders from U.S. residents using Defendants' Marks and Trade Dress constitutes willful trademark and trade dress infringement  *Cf. Panavision*, 141 F.3d at 1322 (plaintiff's Lanham Act claim arose out of defendant's cybersquatting on infringing domain name); *cf. Quokka*, 99 F. Supp. 2d at 1113 ("The harm to [plaintiff's] U.S. trademark rights would not have occurred but for the defendant's operation of a website aimed at U.S. customers.").  Indeed, many

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 15
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1    courts applying the Ninth Circuit's "purposeful direction" test in intellectual property cases

2    simply presume that the claims arise out of the acts constituting "purposeful direction," and

3    skip to the reasonableness inquiry.  *See, e.g., Amini*, 497 F. Supp. 2d at 1108; *Life Alert*, 2008

4    WL 5412431 at, *5-6.

5         Second, Plaintiffs' claims also arise from Defendants' applications to register

6    Defendants' Marks with the USPTO.  *Cf. Monster Cable*, 642 F. Supp. 2d at 1008-10

7    (exercising specific jurisdiction based on defendant's application to register a single allegedly-

8    infringing trademark); *AARP v. 200 Kelsey Associates, LLC*, 2009 WL 47499, at *7 (S.D.N.Y.

9    2009) (controversy existed where intent to use trademark application filed with the USPTO).

10        Third, Plaintiffs' claims arise from Defendants' long history of U.S. contacts

11   promoting and consulting regarding Plaintiffs' Marks and Plaintiffs' Trade Dress.  Defendants'

12   knowledge of Plaintiffs' Marks and Trade Dress, gained during the 7-year relationship with

13   Plaintiffs, relates very specifically to allegations of "copying," which is a factor considered in

14   the "likelihood of confusion" analysis for trademark infringement (*see* PI Motion at 18), and

15   to the allegations that infringement is willful (*see* Complaint, ¶¶ 64-67).  Further, Defendants

16   have turned the list of U.S. contacts they developed while promoting Plaintiffs' goods into a

17   feeding ground for sales and promotion of their own, infringing products.  Plaintiffs' claims

18   arise in part from the sales solicitations made to these contacts.

19            c.    **The Exercise of Jurisdiction is Reasonable**

20        Even where the first two specific jurisdiction prongs are met, jurisdiction still must be

21   reasonable to satisfy the due process clause.  In other words, it must "comport with 'fair play

22   and substantial justice.'"  *Panavision*, 141 F.3d at 1322 (quoting *Burger King*, 471 U.S. at

23   476).  Where defendants purposefully direct activities at a plaintiff in the forum, they must

24   "present a compelling case that the presence of some other considerations would render

25   jurisdiction unreasonable."  *Panavision*, 141 F.3d at 1322.  Courts consider the following

26   factors in addressing reasonableness: (1) the extent of a defendant's purposeful interjection;

27   (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 16
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1   sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute;

2   (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to

3   the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative

4   forum. *Id.* at 1323.

### i.   Purposeful Interjection

6          As discussed at length below, Defendants have purposefully engaged in substantial,

7   continuous, and systematic business contacts in Washington and throughout the United States

8   over at least the past seven years, and more recently have solicited business for products using

9   Defendants' Marks and Trade Dress, and have filed trademark applications with the USPTO.

10  Accordingly, this factor weighs heavily in favor of exercising jurisdiction.

### ii.   Defendants' Burden

12         Unless a defendant's burden in litigating in the forum "is so great as to constitute a

13  deprivation of due process, it will not overcome clear justifications for the exercise of

14  jurisdiction." *Panavision*, 141 F.3d at 1323. Here, Defendants are based approximately half

15  an hour away from the Western District of Washington, and approximately 2 1/2 hours away

16  from the federal courthouse in Seattle. She acknowledges in her declaration that she comes to

17  Washington for both business and personal reasons. Moreover, Ms. Vanderhaeghe is

18  accustomed to traveling to much further-flung corners of the United States. Accordingly,

19  Defendants' burden is no greater, and likely less substantial, than many people who live

20  within the Western District of Washington.

### iii.   Sovereignty

22         Plaintiffs are a U.S. and a Canadian company. Defendants are a Canadian citizen and

23  the related Canadian corporations that she owns and controls. This suit concerns infringement

24  of United States trademarks and trade dress under U.S. law. Accordingly, there is no conflict

25  with the law or sovereignty of Canada. Even if this factor were to weigh in favor of

26  Defendants, it is not controlling. *See Harris Rutsky*, 328 F.3d at 1133 (such a result "would

27  always prevent suit against a foreign national in a United States court").

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 17
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

### iv.      Forum's Interest

The home forum of a plaintiff who alleges tortious injury has a strong interest in providing an effective means of redress for such plaintiff. *Panavision*, 141 F.3d at 1323. Similarly, where a complaint focuses on trademark infringement and unfair competition under federal law, both the local Plaintiff and the United States as a whole have a strong interest in the exercise of jurisdiction. *See Silver Ring Splint*, 405 F. Supp. 2d at 515. Thus, Washington and the United States have a strong interest in providing redress.

### v.      Efficient Resolution

"This factor focuses on the location of the evidence and witnesses" and "is no longer weighed heavily given the modern advances in communication and transportation." *Panavision*, 141 F.3d at 1323. In this case, much of NF, Inc.'s evidence and most of its witnesses are located in Washington. Moreover, as noted above, Defendants are located in nearby Vancouver, B.C., such that the Western District of Washington is a convenient forum.

### vi.      Plaintiffs' Convenience

This factor favors the exercise of jurisdiction due to NF, Inc.'s presence in Washington and both Plaintiffs' choice to file suit in the Western District of Washington.

### vii.      Alternative Forum

Defendants suggest that this suit should or could take place in Canada. (Motion at 12.) However, a court in Canada cannot determine whether Defendants' acts violate U.S. trademark and trade dress law, let alone the pendent claims under Washington law. Plaintiffs' claims under U.S. law could not be asserted in Canada. Further, a Canadian venue would simply shift Defendants' slight burden of travelling from Vancouver, B.C. to Seattle, WA onto NF, Inc. and its witnesses, who would have to travel to Vancouver, B.C.

In sum, this Court's exercise of personal jurisdiction over Defendants comports with fair play and substantial justice, and Defendants cannot come close to bearing their burden to show a "compelling case" to the contrary. *Cf. Life Alert*, 2008 WL 5412431 at, *6 (exercise of jurisdiction over Canadian defendant accused of trademark infringement is reasonable);

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 18
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1   *Silver Ring*, 508 F. Supp. 2d at 515-16 (same); *Northern Light Tech., Inc. v. Northern Lights*

2   *Club*, 97 F. Supp. 2d 96, 107-08 (D. Mass. 2000) (same).

3       **2.**    **General Jurisdiction Exists Under Rule 4(k)(2)**

4       Defendants have a 7-year history of substantial, continuous, and systematic business

5   contacts in the United States.  As such, they are subject to the general jurisdiction of this

6   Court, even if *arguendo* Plaintiffs' claims were not found to arise from Defendants' activities.

7   General jurisdiction arises where defendants have "substantial" or "continuous and

8   systematic" contacts with the forum.  *Helicopteros*, 466 U.S. at 416.  In analyzing general

9   jurisdiction, the Ninth Circuit has stated there is no "precise checklist," but has commented

10  that "Longevity, continuity, volume, economic impact, physical presence, and integration into

11  the state's regulatory or economic markets are among the indicia" of a "continuous and

12  systematic" contact.  *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1172 (9th Cir.

13  2006) (affirming Judge Pechman's finding of general jurisdiction where smoker who only

14  recently had emigrated to the U.S. sued tobacco company in Washington based on conduct

15  that occurred in the Philippines).  *Tuazon* cited with approval decisions from other circuits

16  finding general jurisdiction where a defendant had several distributors in a state and generated

17  substantial annual revenues.

18      Defendants' contacts with the U.S. have indeed been continuous and systematic.

19  Ms. Vanderhaeghe is, in her own words, "America's Women's Health Expert," and for at least

20  the past 7 years, Defendants regularly engaged in business in the United States.  Such

21  business contacts included hundreds of face-to-face lectures and sales events with retail and

22  consumer customers, and hundreds of promotional interviews with publications, radio

23  stations, and television stations in the United States in promotion of Plaintiffs' Women's Line.

24  Such business contacts have been substantial, continuous, and systematic, resulting in

25  payments of over C\$750,000.  This U.S.-derived revenue amounts to approximately 25% of

26  the total amount of money Defendants were paid by Plaintiffs.  Second McKnight Decl. ¶ 8;

27  First McKnight Decl. ¶¶ 28-29; Parkes Decl. ¶¶ 18-19.  This does not take into account any

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 19
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1206.682.8100

revenue that Defendants have received from U.S. book publishing endeavors, or any other U.S. business unrelated to NF, Inc., on which Plaintiffs have not received any discovery to date. Ms. Vanderhaeghe has published at least 6 books available for purchase in the U.S., and released by U.S. publishers.  Carr Decl. ¶¶ 11-15.  Defendants also maintained a web site aimed in substantial part at U.S. residents.

Moreover, Defendants have continued their business contacts in support of Defendants' Women's Line, filing 15 U.S. trademark applications, attending U.S. trade shows, soliciting U.S. sales representatives, contacting at least one U.S. retailer, and generally "work[ing] to stock health food stores in the U.S."  By virtue of such long, substantial, continuous, and systematic contacts in the U.S., Defendants are subject to general jurisdiction in the U.S. [7]

### 3.  Defendants' Attempts to Avoid Jurisdiction Under Rule 4(k)(2) Are Unavailing

In arguing that Rule 4(k)(2) should not be applied here, Defendants argue that they have not sold their products in the U.S.  As discussed above, this argument is unavailing.

Defendants also cite *Holland America* and *Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001), in which jurisdiction under Rule 4(k)(2) was not found, but these cases are easily distinguishable.  In *Holland America*, the defendants' websites were not directed at the U.S. and the defendant's only contact with the U.S. was sponsoring a conference.  Here, by contrast, Defendants expressly have tailored their website to U.S. visitors, and have solicited customers in the U.S. to purchase products.  Further, Defendants have filed trademark applications (which the court in *Monster Cable* found was sufficient in itself under Rule 4(k)(2)), and spent 7 years in the U.S. promoting the very marks they are now infringing.

---

[7] At a minimum, the evidence presented here indicates the presence of a substantial question about whether Defendants' contacts with the U.S. are sufficient for a finding of general jurisdiction, a question that cannot be fully and finally answered until pending discovery is taken.

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 20
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

In *Unocal*, the defendant's contacts were also far more limited.  The sole contact with the U.S. was the defendant's listing of its securities on a U.S. stock exchange.  The plaintiff's claim there did not relate to that listing.

## C.   Defendants are Subject to Specific Jurisdiction Based on Their Washington Contacts

Many of Defendants' acts constituting purposeful availment of the privilege of conducting business in the U.S. involved Washington residents.  By the same token, Defendants purposefully directed some of their activities at Washington residents.  For example, Defendants solicited a business relationship with at least one Washington-resident sales representative under which he would sell Defendants' Women's Line.  Similarly, Defendants sent an e-mail sales solicitation that Plaintiffs' evidence shows was received by at least several Washington residents.  Given that the email solicitation was sent to 30,000 U.S. residents, it stands to reason that a substantial number of additional recipients were located in Washington, although discovery concerning Defendants' contacts database would be necessary to confirm the point.  Moreover, Plaintiffs engaged in an ongoing business relationship with Washington resident NF, Inc., for the past 7 years, during which Defendants promoted and helped to develop Plaintiffs' Women's Line, Marks, and Trade Dress.  Defendants then knocked off the products, marks and trade dress in creating their own product line.  These last facts are highly relevant to the "likelihood of infringement" and "willfulness" analyses used in determining infringement.

In addition, Defendants' actions must have been undertaken with the knowledge that they would have an effect on Plaintiff NF, Inc. based in Washington.  After all, Defendants' infringing products are a knock-off of NF, Inc.'s line, with which Defendants were already intimately familiar.

In *Attachmate*, 686 F. Supp. 2d at 1147, Judge Robart found that jurisdiction was satisfied under the "effects" test where a Florida defendant committed copyright infringement in Florida, knowing that that the plaintiff was located in Washington, and where the parties

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 21
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

had a prior ongoing relationship. The case is notably similar to the case here, except that the present case also involves solicitation of infringing sales in Washington and other Washington attributes.

Plaintiffs' claims arise from Defendants' purposeful direction of activities at Washington residents. As discussed above, Defendants knew that NF, Inc. is based in Washington, and yet willfully engaged in trademark infringement, including e-mail solicitations sent to Washington residents and solicitation of a Washington-resident sales representative, knowing that such acts would harm NF, Inc. in Washington. *Cf., e.g.,* *Panavision*, 141 F.3d at 1322; *Attachmate*, 686 F. Supp. 2d at 1146-48. Moreover, as discussed above, Plaintiffs' claims arise out of Defendants' long history of promotion and consulting regarding Plaintiffs' Marks and Trade Dress, which was undertaken under an agreement with Washington resident NF, Inc. and consisted of numerous business communications to and from Washington residents working on behalf of NF, Inc. out of NF, Inc.'s Everett offices. Accordingly, facts demonstrating a prima facie case of specific jurisdiction have been shown.

**D.   Defendants May Be Subject to General Jurisdiction Based On Their Washington Contacts, Depending on Discovery**

Nearly all of Defendants' U.S. contacts giving rise to general jurisdiction, discussed above, have been the result of and coordinated through contacts with Washington. Defendants also derived significant revenues from NF, Inc. in Washington. Defendants also engaged in ongoing contacts and a business relationship for 7 years with NF, Inc. in Washington. These contacts included e-mails and telephone conferences with Washington residents working out of NF, Inc.'s offices in Everett, Washington. Additional facts are needed to determine whether general jurisdiction exists based on Washington contacts, such as the nature and extent of the visits to Washington that Ms. Vanderhaeghe mentions in her declaration, the portion of Defendants' entire income that derives from Washington sources,

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 22
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1   her records of her communications with NF, Inc., and her communications with Washington

2   residents regarding her current line of products.

3   **E.      Further Discovery Would Confirm Personal Jurisdiction**

4          Plaintiffs believe the evidence cited above is sufficient to require denial of Defendants'

5   motion.  Additional facts that can only be obtained through discovery would be required if the

6   facts  above  are  deemed  insufficient.    Plaintiffs  have  served  document  requests  and  a

7   deposition notice requesting, among other things:  (1) Defendants' communications regarding

8   Defendants' Women's Line with U.S. residents, including retailers, distributors, or dealers;

9   (2) Statistics regarding visitors to the LV Website; (3) Defendants' travel to the U.S. since

10  June 2009; (4) Offers to sell Defendants' Women's Line to persons in the U.S. (5) The

11  conception,  selection,  and  design  of  Defendants'  Marks  and  Defendants'  Trade  Dress;  and

12  (6) the offering, sales, and distribution of Defendants' Women's Line to U.S. residents.  The

13  results of these inquiries are directly relevant to the question of jurisdiction.

14         Thus, if the Court does not deny Defendants' Motion outright, Plaintiffs' request that

15  the  Court  deny  or  defer  Defendants'  motion  to  dismiss  pending  completion  of  discovery

16  regarding jurisdictional issues.

17                      **IV.     CONCLUSION**

18         Thus, for the reasons stated above, Plaintiffs respectfully request that Defendants'

19  motion to dismiss for lack of personal jurisdiction be denied.

20         Dated this 26th day of July, 2010.

21

22                          CHRISTENSEN O'CONNOR
                            JOHNSON KINDNESS[PLLC]

23

24

25                          s/ Michael N. Zachary
                            Michael N. Zachary, WSBA No.:  27064
26                          Michael P. Matesky, II, WSBA No.:  39586
27                          Christensen O'Connor Johnson Kindness[PLLC]

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 23
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR      1420 Fifth Avenue
JOHNSON | KINDNESS          Suite 2800
                            Seattle, WA 98101-2347
                            1.206.682.8100

1420 Fifth Avenue, Suite 2800
Seattle, WA  98101-2347
Telephone:  206.682.8100
Fax:  206.224.0779
Email:  michael.zachary@cojk.com,
mike.matesky@cojk.com, courtdoc@cojk.com

Attorneys for Plaintiffs

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 24
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on July 26, 2010, I electronically filed the foregoing with the
Clerk of the Court using the CM/ECF system, which will send such notification to the
4    following:

5

6    Warren J. Rheaume
Davis Wright Tremaine LLP
7    warrenrheaume@dwt.com

8    Sarah Duran
Davis Wright Tremaine LLP
9    sarahduran@dwt.com

10

11                                              s/ Michael N. Zachary
Michael N. Zachary, WSBA No.: 27064
12                                              Michael P. Matesky, II, WSBA No.: 39586
Christensen O'Connor Johnson KindnessPLLC
13                                              1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
14                                              Telephone: 206.682.8100
Fax: 206.224.0779
15                                              Email: michael.zachary@cojk.com,
mike.matesky@cojk.com, courtdoc@cojk.com
16

17                                              Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

27

PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS (2:10-cv-00907 RAJ) - 25
NFNP\RESPONSE TO MTD DRAFT 7-22-10.DOC

CHRISTENSEN | O'CONNOR        1420 Fifth Avenue
JOHNSON | KINDNESS           Suite 2800
                             Seattle, WA 98101-2347
                             1.206.682.8100