The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| PREFERRED NUTRITION INC., a Canadian corporation; and NATURAL FACTORS NUTRITIONAL PRODUCTS INC., a Washington corporation,<br><br>Plaintiffs,<br><br>v.<br><br>LORNA VANDERHAEGHE, a natural person; HEADLINES PROMOTIONS LTD., a Canadian corporation; and LORNA VANDERHAEGHE, INC., a purported entity of unknown corporate status,<br><br>Defendants. | No. 2:10-cv-00907 RAJ<br><br>PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION<br><br>**NOTE ON MOTION CALENDAR August 6, 2010**<br><br>**ORAL ARGUMENT REQUESTED** |

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION (2:10-cv-00907)
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

# I. INTRODUCTION[1]

Defendants raise just about every technical argument in the book, but there is no escaping the fact that that their marks and names were intentionally designed to play off of those used on Plaintiffs' U.S. Women's Line. Going right down the list, for each and every mark in Plaintiffs' U.S. Women's Line sold by Natural Factors that uses "_____Sense," there is a corresponding mark in Defendants' lineup that uses "____Smart." It's not just one mark, it's all of them. Why did Defendants adopt every single prefix that Natural Factors uses, and then couple that prefix with a word that sounds similar and conveys a meaning similar to that of "sense?" There is no good answer to that question. And then why did they couple that copycat line of marks with a copycat trade dress? They don't answer that question either. Indeed, Defendants don't even bother to dispute that their trade dress is confusingly-similar to Plaintiffs' trade dress. The only reasonable answer to these questions is that Defendants were trying to trade off of the good will of Plaintiffs.

Although Defendants' brief reads like an issue-spotter law school exam answer, their main points are these: First, Defendants claim that *they* own the marks that Plaintiffs used and registered. Since four of the marks are incontestable, Defendants would have to show that Defendants committed fraud in registering the marks to have any chance at all on this defense. But several facts undermine their claim: (1) Defendants acknowledged in an email at the inception of the relationship that PNI owned the marks; (2) Defendants were aware Plaintiffs had registered and were using the marks; and (3) Mr. Parkes has averred under oath that the agreement was that PNI would own the marks, and the economics of the whole business relationship is consistent with his statements, but inconsistent with Defendants'.

Second, Defendants argue that the marks are not confusingly similar, and that their trade dress for the U.S. has not even been designed yet. They take the marks in isolation,

---

[1] Plaintiffs' failure to request oral argument in the caption of their Motion for a Preliminary Injunction was inadvertent. Plaintiffs do request oral argument on this matter.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A  
PRELIMINARY INJUNCTION (2:10-cv-00907) - 1  
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR  
JOHNSON | KINDNESS

1420 Fifth Avenue  
Suite 2800  
Seattle, WA 98101-2347  
1.206.682.8100

failing to recognize that the marks are part of a product line, and that Defendants have copied the whole line, with identical prefixes and similar suffixes. Regarding the trade dress, they ignore the fact that the nearly identical trade dress they supposedly have not yet designed has been shown to at least 30,000 U.S. women who were directed to visit Defendants' website to view the products bearing such trade dress.

Third, Defendants argue that an injunction is improper because they have unilaterally decided to halt their formal U.S. launch. However, Defendants' products are currently being advertised and sold to U.S. customers online, and Defendants acknowledge that they may start a formal U.S. launch before this litigation is resolved if no preliminary injunction issues. Such facts present the <u>ideal</u> posture to enter a preliminary injunction to preserver the *status quo ante litem*. Accordingly, Plaintiffs respectfully request that the Court grant their motion for a preliminary injunction.

## II. ARGUMENT

### A. Defendants Concede Confusing Similarity of Trade Dress

Nowhere do Defendants deny that their trade dress is confusingly similar to Plaintiffs'. Defendants completely ignore trade dress in their likelihood-of-confusion analysis. Instead, Defendants argue that their trade dress has "been used in Canada only," and there is thus "no conflict." (Opp. at 12.) However, the facts show that Defendants' Trade Dress *is* used "in commerce" in violation of the Lanham Act.

The Lanham Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127; *Ocean Garden, Inc. v. Marktrade Co. Inc.*, 953 F.2d 500, 503 (9th Cir. 1991) ("[T]he Lanham Act provides a 'broad jurisdictional grant.'") (quoting *Steele v. Bulova Watch Co.*, 344 U.S. 280, 283, 286 (1952)). Defendants use their trade dress on the LV Website, which is directed to an audience that is 50% U.S. residents. (First Carr Declaration, Dkt. No. 20, ¶ 10, Ex. 7.) Defendants explicitly offered Defendants' Women's Line for sale to U.S. residents in an e-mail solicitation directed to "over 30,000 American women." (First Parkes Decl., Dkt. No. 15, ¶¶ 57-59, 74, Exs. 28, 33.) The email

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION (2:10-cv-00907) - 2
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

used the color scheme embodied in Defendants' Trade Dress (copied from Plaintiffs) and contained **REDACTED**

Defendants know that some of their online retail customers in Canada explicitly advertise and sell Defendants' Women's Line to U.S. residents, and have not stopped such U.S. sales. (Pls.' Mot., Dkt. No. 13,, at 15; Second Carr Decl. ¶ 10, Ex. 7.)

Courts have routinely held that similar activities affecting U.S. residents fall within the Lanham Act.. *E.g., Int'l Bancorp, L.L.C. v. Societe Des Bains De Mer Et Du Cercle Des Etrangers A Monoco*, 329 F.3d 359 (4th Cir. 2003) (Foreign casino serving U.S. customers engaged in "use in commerce"); *Playboy Enters., Inc. v. Chuckleberry Publ'g, Inc.*, 939 F. Supp. 1032, 1039 (S.D.N.Y. 1996) ("Defendant has actively solicited United States customers to its Internet site"); *Bertolli USA, Inc. v. Filippo Bertolli Fine Foods, Ltd.*, 662 F. Supp. 203, 205 (S.D.N.Y. 1987) ("[S]ending one bottle of olive oil to a distributor in San Francisco and offering the product to another distributor in New York, plus . . . printing labels and cartons-- are sufficient to meet the 'use in commerce' test.").

Defendants clearly understand that their provision of information and advertising via the LV Website constitutes "commerce" that may be regulated by Congress, as they have included an FDA disclaimer on every page of the LV Website. (First Parkes Decl. Exs. 18-19, 21.) In short, Defendants' argument that they don't use their trade dress in the U.S. fails.

B. **Defendants' Likelihood of Confusion Analysis is Fatally Flawed**

1. **Overarching Flaws**

Because Defendants ignore their trade dress, and thus how Defendants' Marks and Defendants' Women's Line actually appear in the marketplace, their likelihood-of-confusion analysis is entirely deficient with regard to each factor. Moreover, Defendants disregard this Court's reliance, and that of the Ninth Circuit, on the three most important confusion factors: (1) Similarity of Marks, (2) Similarity of Goods, and (3) Similarity of Marketing Channels. Defendants cite to a single Ninth Circuit case to support their suggestion that these factors are

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION (2:10-cv-00907) - 3
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

only primary in "Internet" cases. (Opp. at 13 n.10.) However, courts have not limited reliance on these three factors to "Internet only" cases. *E.g., Maxim Integrated Prods., Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1031-32 (N.D. Cal. 2009); *Jonathan Neil & Assocs., Inc. v. JNA Seattle, Inc.*, No. C06-1455JLR, at 9 (W.D. Wash. Mar. 14, 2007); *Tillamook Country Smoker, Inc. v. Tillamook County Creamery Ass'n*, 311 F. Supp. 2d 1023, 1041-42 (D. Or. 2004). Further, Defendants themselves rely on Internet marketing of the goods at issue. (Opp. at 12 (citing Clark Decl., Dkt. No. 24, ¶¶ 7-11, Exs. G-K).)

2. **Specific Confusion Factors**

   a. **Similarity of Marks.**

It is well-settled that "a composite mark is tested for its validity and distinctiveness by looking at it as a whole, rather than dissecting it into its component parts." 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:27; *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000) ("[I]t is the mark in its entirety that must be considered--not simply individual elements of that mark."). Although Defendants pay lip service to this anti-dissection rule, they proceed to focus solely on the "sense" and "smart" components of the marks at issue. (Opp. at 16 ("SENSE and SMART are not similar").) Defendants also fail to address the overall similarity of Plaintiffs' Marks and Defendants' Marks as <u>families of product names</u>.[2] Moreover, to the extent Defendants argue they properly focus on "sense" and "smart" components because the mark prefixes (e.g., ESTRO, URI, MENO, etc.) are "common," their analysis is faulty, as discussed below.

   b. **Similarity of Marketing Channels**[3]

Defendants argue that "an analysis of marketing channels is not possible at this time."

---

[2] Although Defendants claim Plaintiffs have not shown recognition of Plaintiffs' Marks as a family of marks, such recognition may be shown by evidence of the nature of the marks themselves and the extent of their use and advertising, which Plaintiffs have provided. *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 1463 (Fed. Cir. 1991); First McKnight Decl. ¶¶ 6-7, 9, 13, 31-32.

[3] Defendants concede similarity of the goods at issue.

**REDACTED**

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION (2:10-cv-00907) - 4
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1  (Opp. at 19.) However, Defendants do not deny that they market goods through the same website and e-mail newsletters previously used to market Plaintiffs' Women's Line. Even cases cited by Defendants recognize that this supports finding a likelihood of confusion. *E.g., Glow Indus. Inc. v. Lopez*, 252 F. Supp. 2d. 962, 1000-01 (C.D. Cal. 2002) (finding of use of similar marketing channels "is reinforced when one considers that both companies offer their products for sale over the internet") (citation omitted). Moreover, the ultimate consumers for the goods are the same, and Defendants admitted in a recent deposition that

REDACTED

### c. Strength of Marks

The strength of marks is based on both conceptual strength and market strength. *GoTo.Com v. Walt Disney Co.*, 202 F.3d 1199, 1207 (9th Cir. 2000). Defendants focus solely on conceptual strength, ignoring Plaintiffs' extensive use of Plaintiffs' Marks and the market strength built up by such use.[4] Defendants cannot rebut the market strength of Plaintiffs' Marks, and such failure demonstrates that this factor favors Plaintiffs.

Moreover, Defendants' conceptual strength analysis is legally flawed and contradicts their own cited case law. First, Defendants improperly categorize Plaintiffs' Marks as "descriptive," while citing cases that suggest similar compound marks (e.g., NUTRI/SYSTEM) are suggestive. (Opp. at 14.). Second, Defendants say Plaintiffs' Marks are weak because they exist in a "crowded field" of similar marks, but rely solely on evidence of others' trademark registrations. Yet, "[t]he mere existence on a register in the Patent and Trademark Office of registrations of marks comprising common elements is not evidence of the circumstances which exist in the market-place or even that purchasers are familiar with the marks." *Con-Stan Indus., Inc. v. Nutri-System Weight Loss Med. Centers of Am. Inc.*, 212

---

[4] Defendants falsely claim Plaintiffs rely on "a recitation of sales numbers" and "advertising in Canada" to show market strength. The First McKnight Declaration describe marketing expenditures, sales numbers, the length of use for Plaintiffs' Marks and Trade Dress in the U.S. *See* ¶¶ 6-7, 9, 13, 31-32.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION (2:10-cv-00907) - 5
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

U.S.P.Q. 953, 956 (T.T.A.B. 1981). Furthermore, Defendants cite mostly to abandoned and cancelled registrations. (Declaration of Andrea Dolder, Dkt. No. 23, Exs. A-I.)

Defendants' failure to analyze trade dress also contradicts the cases they cite, which rely heavily on overall visual appearance in reaching their conclusions. *See Glow Indus.*, 252 F. Supp. 2d. at 996-97 ("[T]he packaging used by plaintiff and defendants for their fragrance products is quite different, and tends to minimize any confusion generated by the similarity in the sound and meaning of the trademarks."); *Moose Creek, Inc. v. Abercrombie & Fitch Co.*, 331 F. Supp. 2d 1214, 1224-25, 1229 (C.D. Cal. 2004) (noting crowded field of moose logos "very similar in appearance to the moose depicted in Plaintiffs' marks" and still finding certain moose logos used by the parties to be similar); *see also Entrepreneur Media, Inc. v. Smith*, 279 F.3d 1135, 1140, 1143-44, 1152 (9th Cir. 2002) (despite crowded field of "ENTREPRENEUR" marks, ENTREPRENEUR ILLUSTRATED was likely to cause confusion as a matter of law, "because of the strong visual similarity of the marks…and because of [Defendant's] knowing adoption of this similar mark.").

Even if the Court were to consider the registrations cited by Defendants, which are legally insufficient to demonstrate a "crowded field," the specimens of use submitted in support of the registrations identified by Defendants in their Opposition show packaging that is quite visually dissimilar from Plaintiffs' trade dress. (Opp. at 16; Second Carr Decl. ¶¶ 3-8, Exs. 1-5.) Thus, even if consumers were accustomed to distinguishing between multiple marks including the term, e.g., ESTRO (which Defendants have not shown), they are not accustomed to distinguishing between such marks used with nearly-identical trade dress.

Overall, Plaintiffs' approach to analyzing the strength of Plaintiffs' marks is both legally improper and illogical. Under Plaintiffs' approach, world-renowned marks such as COCA-COLA and MICROSOFT would be categorized as descriptive, weak, and subject to little protection simply because one or both portions of such compound marks (COLA or SOFT) are arguably descriptive and commonly incorporated into other marks.

   d. **Actual Confusion**

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION (2:10-cv-00907) - 6
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

Defendants do not deny that the operators of Cureself were in fact confused into believing the Defendants' Women's Line is a new version of Plaintiffs' Women's Line. Instead, Defendants argue that the confusion of Cureself, a Canadian online retailer that sells to U.S. customers, is not relevant to confusion in the U.S. Defendants offer no reason why U.S. customers (including Cureself's U.S. customers) would be somehow more resistant to confusion than Canadian customers. Cureself's confusion is, in fact, indicative of what would occur in the U.S. as well. Furthermore, Defendants' claim that a lack of evidence of actual confusion would make this factor "favor" Defendants is mistaken. *Brookfield*, 174 F.3d at 10go (9th Cir. 1999) (Actual confusion is not relevant where plaintiff filed for preliminary injunction before defendant began actively using the accused mark); *GoTo.com*, 202 F.3d at 1208 (supposed lack of actual confusion "sheds little light on the case before us").

e. **Degree of Care**

Defendants argue that customers are likely to be extremely careful when purchasing the goods at issue, based on Ms. Vanderhaeghe's Declaration. However, under cross-examination, Ms. Vanderhaeghe admitted REDACTED Further, Ms. Vanderhaeghe's declaration statements are directly contradicted by the experiences described in her regular e-newsletter, in which she states that "[m]any of you did not realize until you looked at the label of a product you had purchased lately that it was not mine but instead the no-name brand." (Aug. 6, 2010 McKnight Decl. ("Reply McKnight Decl.") ¶ 14, Ex. 2.) Furthermore, although Defendants describe the goods at issue as "relatively expensive, often retailing for $20 or more per bottle," Opp. at 20, courts have held that customers purchasing similarly-priced goods exhibit a low level of care. *Maxim*, 654 F. Supp. 2d at 1035 (consumers likely to exhibit low degree of care purchasing $50 electronics products);

f. **Defendants' Intent**

Defendants argue that this factor weighs against a likelihood of confusion because Ms. Vanderhaeghe informed Deane Parkes of her intent to use Defendants' Marks in September of

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION (2:10-cv-00907) - 7
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1  2009, demonstrating "good faith." This is mistaken. First, the intent factor is not a mechanism to punish "bad faith," but a recognition that those attempting to create an association with plaintiffs' trademarks are likely going to succeed. 4 *McCarthy on Trademarks & Unfair Competition* § 23:110. Ms Vanderhaeghe intended to maintain her association with Factors Group and PNI at the time she came up with Defendants' Marks. (Vanderhaeghe Decl., Dkt. No. 22, ¶¶ 41-45; August 6, 2010 Parkes Decl. ("Parkes Reply Decl.") ¶¶ 14-15.) Earlier disclosure does not rebut the presumption that she intended the marks to be associated with Plaintiffs' Marks. Moreover, Defendants' decision to use nearly-identical trade dress and maintain use of Defendants' Marks <u>after</u> the parties' relationship was severed in January 2010 shows bad faith intent to deceive.

C.  **Plaintiffs' Own Plaintiffs' Marks and Trade Dress**

   1.  **Defendants' Claim to Own Plaintiffs' Incontestable Marks Fails**

Defendants argue that Plaintiffs' four incontestable trademark registrations are invalid because they were fraudulently obtained. To prove fraud, Defendants must show that PNI knowingly made false, material misrepresentations with intent to deceive. *In re Bose Corp.*, 580 F.3d 1240, 1243-44 (Fed. Cir. 2009) (collecting cases). As *Bose* noted, "there is 'a material legal distinction between a 'false' representation and a 'fraudulent' one, the latter involving an intent to deceive, whereas the former may be occasioned by a misunderstanding, an inadvertence, a mere negligent omission, or the like…In other words, deception must be willful to constitute fraud." *Id.* at 1243; *see also Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 996 (9th Cir. 2001) (affidavit is only fraudulent if affiant acts with scienter).

Ms. Vanderhaeghe's post-hoc, self-serving declaration that PNI agreed she would own all intellectual property associated with Plaintiffs' Women's Line is not only false, but contradicted by her own actions and statements. In 2002, Ms. Vanderhaeghe emailed Mr. Parkes acknowledging that PNI owned the trademarks. (Parkes Reply Decl. ¶ 5, Ex. 1.) She also **REDACTED** In fact, Ms.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION (2:10-cv-00907) - 8
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

1  Vanderhaeghe reaffirmed her belief that PNI owned the rights to Plaintiffs' Marks as recently
2  as January of this year.[5] (First Parkes Decl. ¶ 74, Ex. 33.) Further, her assertions of
3  ownership make no sense given that she
4  REDACTED
5  First Parkes Decl. ¶¶ 18-19; First McKnight Decl. ¶¶ 28-29.) Mr. Parkes is clear in his
6  declaration that PNI owned, and always was supposed to own, the trademarks. (First Parkes
7  Decl. ¶¶ 15-16, 23-26, 73-74, 76-78; Parkes Reply Decl. ¶ 5.) Defendants showing is
8  woefully deficient, and should be rejected.

Even now Ms. Vanderhaeghe's notions of supposed product "ownership" are unclear.

REDACTED

Plaintiffs did not label U.S. products with Ms. Vanderhaeghe's name or likeness except for a brief period, and she admits that she did not formulate, e.g., ADRENASENSE, THYROSENSE, or VEINSENSE products, among others. (Id. 220:8-10, 225:21-226:23.) Moreover, Ms. Vanderhaeghe acknowledges that formulations

REDACTED Vanderhaeghe Decl. ¶ 17.) On this record, Defendants cannot possibly show that PNI did not own Plaintiffs' Marks, knew it did not own Plaintiffs' Marks, and intentionally deceived the PTO by registering Plaintiffs' Marks in its name.[6]

### 2. Defendants' Attacks on Plaintiffs' Trade Dress are Legally Flawed

Defendants argue that because Plaintiffs have changed their U.S. trade dress, and some retailers may still display images of old trade dress, Plaintiffs cannot claim any rights to their current trade dress. Defendants' cases do not support this argument. *Moose Creek* contradicts

---

[5] Defendants make much of casual references by PNI to Plaintiff's Women's Line as "Lorna's" line. Yet, Ms. Vanderhaeghe herself referred to Plaintiffs' Women's Line as "Preferred Nutrition's women's line." Vanderhaeghe Decl. Ex. E.

[6] Defendants' "unclean hands" defense, based on PNI's supposed "fraud," fails for the same reasons.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION (2:10-cv-00907) - 9
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

their claim (the court found the various marks were likely to be valid). 331 F. Supp. 2d at 1222-23. *Regal Jewelry* is easily distinguishable, as the plaintiffs there **(a)** failed to consistently define their trade dress, and **(b)** failed to show that they actually used the elements described as their trade dress. *Regal Jewelry Co. v. Kingsbridge Int'l, Inc.*, 999 F. Supp. 477, 482-83. (S.D.N.Y. 1998)).

Plaintiffs here have consistently identified the elements making up their U.S. Trade Dress and have provided images showing consistent use across at least 8 different products. (First McKnight Decl. ¶ 11, Ex. 2.) That Plaintiffs previously used slightly different versions of its U.S. Trade Dress does not negate the inherent distinctiveness and rights that Plaintiffs have developed in their current U.S. Trade Dress. Defendants' citation to *Clicks Billiards v. Sixshooters* (Opp. at 12) is irrelevant because the plaintiff there made no claim that its trade dress was inherently distinctive, in contrast to the present case and the Supreme Court's recognition that <u>packaging</u> trade dress is generally taken as a source identifier. 251 F.3d 1252, 158 n.1 (9th Cir. 2001); *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212-15 (2000) (noting "[t]he attribution of inherent distinctiveness to…product packaging.").

### D. Defendants Fail to Rebut the Presumption of Irreparable Harm

Defendants do not mention or seek to distinguish the well-settled law that irreparable harm may be presumed in trademark cases. Rather, Defendants argue that, because they have decided to freeze their attempts to sell Defendants' Women's Line through traditional channels in the U.S., Plaintiffs cannot show irreparable harm.[7] Yet, Defendants acknowledge that they

REDACTED

If defendants were allowed to

---

[7] As described above, Defendants are already engaging in infringement significantly affecting the U.S.. Moreover, Ms. Vanderhaeghe herself acknowledges that loss of brand control and reputation constitutes irreparable harm in a trademark context. (Vanderhaeghe Decl. ¶¶ 67, 69.); *see also Masters Software, Inc. v. Discovery Commc'ns, Inc.*, Order, No. C10-405RAJ at 10, 19-20 (W.D. Wash. July 17, 2010).

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION (2:10-cv-00907) - 10
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

escape preliminary injunctions by unilaterally stopping the accused activity, REDACTED, it would create perverse incentives and penalize plaintiffs who timely request an injunction <u>before</u> a defendant actually launches its product. The posture here is actually an ideal time for entry of an injunction to preserve the status quo. *See Bertolli*, 662 F. Supp. at 205 ("[A] preliminary injunctive decree in a case of this sort is sometimes an act of kindness to the party enjoined. It cuts him off from a business life which, from all the portents, would involve a series of trademark frustrations) (quoting *George Washington Mint, Inc. v. Washington Mint, Inc.*, 349 F. Supp. 255, 263 (S.D.N.Y. 1972)).

Defendants' assertions that they will suffer irreparable harm are without basis. Although Defendants claim not to sell into the U.S., Ms. Vanderhaeghe also claims that an injunction issued by this Court would "devastate" her business. These claims cannot be squared. Moreover, although Defendants claim without any substantiating evidence that rebranding would cost $500,000, they do not distinguish rebranding costs in the U.S. from Canada. Ms. Vanderhaeghe acknowledged in her deposition that REDACTED This is hardly irreparable harm. Moreover, any economic hardship Defendants claim as a result of having to rebrand with non-infringing labels is irrelevant. *See Cadence Design Sys. Inc. v. Avant!, Corp.*, 125 F.3d 824, 830 (9th Cir. 1997).

E.  **Defendants Cannot Overcome Presumption Against Laches**

In trademark cases, a laches defense is presumed to fail if suit is filed within 3 years of the plaintiffs' learning of the infringement. *See* 6 *McCarthy On Trademarks & Unfair Competition* § 31:33 (citing *Ormsby v. Barrett*, No. CV07 5305 RBL, 2008 WL 53119 at, *3 (W.D. Wash. Jan. 2, 2008)). This Court recently held that a delay of one year is not unreasonable and did not prevent entry of a preliminary injunction where the parties spent some of that time trying to reach a mutually satisfactory agreement. *Masters Software,* No. C10-405RAJ at 20-21. In this case, Defendants claim to have informed Plaintiff PNI of Defendants' Marks in September 2009, Plaintiffs did not learn of Defendants' Trade Dress

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION (2:10-cv-00907) - 11
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

until April 2010 (at the earliest), and Plaintiffs did not solicit the 30,000 U.S. women in their database to purchase product and view the trade dress until the end of May 2010. (Opp. at 21-22; First Parkes Decl. ¶¶ 48-51, Exs. 28, 33) Defendants admit that, after Plaintiffs learned of Defendants' Marks, the parties tried for several months to work out a mutually acceptable agreement. (Vanderhaeghe Decl. ¶ 44.) This suit was filed less than two months after learning of Defendants' Trade Dress and about a week after Plaintiffs learned of Defendants' explicit solicitation of U.S. customers. (First Parkes Decl. ¶¶ 48-51, 57-59.) Accordingly, Defendants' laches argument fails.

### F. Propriety of Injunction

Defendants argue that the terms of the proposed injunction are too broad. Plaintiffs do not object to limiting the requested injunction to actions undertaken "in commerce," as used in the Lanham Act. Defendants' other objections are unfounded. Defendants complain that the proposed injunction covers marks used by Defendants that do not directly correspond to Plaintiffs' Marks (e.g., SLEEPSMART). First, this argument is based on Defendants' false claim that Plaintiffs admitted not using or owning any marks that were not explicitly cited in our brief. In fact, Plaintiffs explicitly stated otherwise. (Pls.' Mot. at 5 nn.3-4.) Second, this argument ignores the fact that Plaintiffs' Marks are a family of marks, such that use of, e.g., GLUCOSMART is just as likely to cause confusion as use of, e.g., ESTROSMART. Third, the Ninth Circuit has held that where the infringement to be enjoined relates to similar goods or services, a broad injunction is "especially appropriate." *GoTo.com*, 202 F.3d at 1211.

### III. CONCLUSION

Thus, for the reasons stated above, Plaintiffs respectfully request that Plaintiffs' motion for a preliminary injunction be granted.

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION (2:10-cv-00907) - 12
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

Dated this 6th day of August, 2010.

CHRISTENSEN O'CONNOR
JOHNSON KINDNESS<sup>PLLC</sup>

<u>s/ Michael N. Zachary</u>
Michael N. Zachary, WSBA No.: 27064
Michael P. Matesky, II, WSBA No.: 39586
Christensen O'Connor Johnson Kindness<sup>PLLC</sup>
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
Telephone: 206.682.8100
Fax: 206.224.0779
Email: michael.zachary@cojk.com,
mike.matesky@cojk.com, courtdoc@cojk.com
Attorneys for Plaintiffs

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION (2:10-cv-00907) - 13
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS

1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100

## CERTIFICATE OF SERVICE

I hereby certify that on August 6, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send such notification to the following:

Warren J. Rheaume
Davis Wright Tremaine LLP
warrenrheaume@dwt.com

Sarah Duran
Davis Wright Tremaine LLP
sarahduran@dwt.com

s/ Michael N. Zachary
Michael N. Zachary, WSBA No.: 27064
Michael P. Matesky, II, WSBA No.: 39586
Christensen O'Connor Johnson Kindness PLLC
1420 Fifth Avenue, Suite 2800
Seattle, WA 98101-2347
Telephone: 206.682.8100
Fax: 206.224.0779
Email: michael.zachary@cojk.com,
mike.matesky@cojk.com, courtdoc@cojk.com

Attorneys for Plaintiffs

PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR A
PRELIMINARY INJUNCTION (2:10-cv-00907) - 14
NFNP\REPLY IN SUPPORT OF PI MOTION FINAL.DOC

CHRISTENSEN | O'CONNOR
JOHNSON | KINDNESS
1420 Fifth Avenue
Suite 2800
Seattle, WA 98101-2347
1.206.682.8100